Michael Lovell is a professor at the University of Washington, D.C.   Michael Lovell is a professor at the University of Washington, D.C.  The Honorable Judges of the United States Court of Appeals in and for the 7th Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this honorable court are admonished to draw near and give their attention as the court is now sitting. God save the United States and this honorable court. Good morning ladies and gentlemen. Our first case for this morning is the University of Wisconsin-Milwaukee Student Association v. Lovell. Mr. Grass. Thank you, Your Honor. Your Honors. May it please the court, my name is Gary Grass and I represent the plaintiff's appellants in this case. My clients are mainly students or former students. Many of them prominent student leaders. Do we know for sure that there's at least one current student left in this group? Yes, Your Honor. That's certain. In fact, I have the one student that I'm absolutely certain of right here because he's a good friend of mine. There are different definitions of student, of course, but he is taking classes every And is encompassed within the definition of student in Wisconsin Code 36.095 that you're relying on? Yes. Yes. There is a definition of students elsewhere in the statutes. I think it's 36.09 or no, I'm sorry, 36.11 possibly. That's all right. But at any rate, yes. The central claim in this case is regarding state statute 36.095 and that is what brought us to the court originally and what we consider to be the most important claim here. You know what I would like you to do, which would be very helpful for me, is if you could just very succinctly tell me what your federal theories are. Obviously, if the university isn't complying with state law, that's its own problem, but that's not really something that this court decides. So what are your federal claims? The federal claims are all claims based on particular individuals that in the course of the defendant's conduct were either removed from or denied positions in the student government. There are civil rights claims. And you are saying that there's somehow a property interest in those positions established by state law that then the federal do... See, I'm trying to get you to spell out for me. Yes, that is the case. These are all essentially government employment. These are positions that the students, when they occupy them, they have powers of office that are guaranteed under state law. Under this theory, would, let's say, a local election for a school board, which might have some part-time compensation go with it, would an election contest about such an election then become a federal constitutional claim on this due process theory? It could. I'm not familiar with the state laws regarding municipalities very well, but this is a state position rather than a municipal position. From our point of view, it's not much different from if you were sitting on the Board of Regents or any other position that's set out and required by state law. But in your federal theory, it sounds like disputes under state law about the validity of election results or a gubernatorial or other appointment to one of those positions would necessarily become federal claims under the Constitution because a position in which the plaintiff has an alleged property interest is at stake. I'm not sure I would be that categorical. I haven't considered whether that would be the case all the time. I don't think it would be, but it is possible that we're leading in that direction. I understand your point. That's troubling. The notion that federal judges are going to be refereeing student elections in state universities because some compensation is available seems to me a pretty sweeping theory. Well, I think in this case, when you look at what the type of egregious conduct was on behalf of the individuals involved, the officials of the university, I think we've made out that claim. Let's put that in brackets then because I share some of Judge Hamilton's concerns about the breadth of that. Is there any other federal claim that you're raising? I thought I saw some, but I'd like to hear from you. Yeah, actually, there is really because the issue in this case was not merely a due process concern that they were deprived of their property interest in these positions, but in certain cases, in fact, probably all of these cases, they were done so specifically because of their protected speech. So you have a First Amendment theory? Yes. Okay. The First Amendment is the First Amendment. So can you spell out exactly what that theory is for your clients? All of my clients that had student government positions who were removed from those positions were strong advocates for a view of 36095 and student independence that was disagreed with by the university. They all made public statements in which they said, we want the university to recognize our authority and our power. We have the right to do things differently than the way the university is telling us we need to do them. There were specific disputes over things like funding for the UWM Union. And in each case, when they went out and said things that the university didn't like, that disagreed with their political position, they then exercised their authority to remove them from office or prevent them from attaining office. So it's a retaliation theory they were retaliated against for the content of their speech? Yes, Your Honor. Okay. Anything else? I think there's a little more to that. I'm not sure how well we've pled it. But in fact, there was some touching on even freedom of religion in one of the particular cases of Mr. Siddiq, who was, in fact, at one point ordered to make statements that were contrary to his beliefs, which, as a Muslim, he could not make consistent with his faith. And there is a lot of association along with the speech, because it's all about these individual students that were acting collectively and joining with one another to oppose the university's positions. Mr. Grass, I understand you, in your briefing, to be, at this point, disclaiming money damages at least on the sixth cause of action. Is that right? Yes, Your Honor. Are you seeking money damages on anything else? We would be seeking money damages on the federal causes of action. In the form of lost compensation? Lost compensation, which I admit is a very small amount, but it's still money damages. And other harms to the individual plaintiffs for the value of their positions. If we could establish that, we might need to bring in a vocational expert to explain what the impact was on their future careers. But there is at least potentially some money damages in each of those. Now, some, although not all, of the defendants raised sovereign immunity as a defense. And obviously, when you start talking about money damages, and it's an organ of the state, as UWM is, concerns come up. Yes, well, of course. Because for 1983, for example, the state, which would include UWM, isn't even, quote, a person. So you don't get to the 11th Amendment or sovereign immunity  I agree, Your Honor. So which theories carry with it, or is this in supplemental state theories that you're raising a right to damages? No, no. The only right to money damages I believe that we have, other than I think there may be some minor statutory damages in the public records cases. I haven't looked at that in a while. But primarily the money damages would come from the federal claims. Let me turn this around and ask you whether, even if it were to turn out for some reason, and I won't bother to specify what those reasons might be, even if it were to turn out that money damages are not available, given the posture of this case, is it correct to say that you are still seeking injunctive relief to restore the nature of the student organization that your clients thought you should have had prospectively? Absolutely. So you are looking for some prospective, purely injunctive relief. Absolutely. We would like to see the UWM Student Association's constitution accepted as the legitimate constitution. We would like to see the current puppet student government declared void and for the process to start over and appoint a legitimate student government that truly represents the students. We would like to see old legislation that was put on the books by the legitimate student association at the time recognized which was deleted by the new administration. And that could all be done prospectively without any money being involved, without anything. It could just set things right. There would be some issue in terms of the allocation of future funds because a new student government would be making those allocations. But you wouldn't be going back and saying that because funds were misallocated, they're owed now. No claim like that would be included. I'm just curious. These elections are held every year, right? Yes, Your Honor. And so we're at least three or four election cycles past your individual client claims, right? Yes. So the prospect of injunctive relief, this echoes to me of a challenge, for example, to the results of the United States House of Representatives elections in, let's say, 2010. We wouldn't grant injunctive relief today. And we wouldn't issue an injunction that voided legislation enacted, right? I'm not sure what you would do. God forbid. In this case, we would not be asking for... I mean, the election process does go on every year. And exactly what type of relief would be plausible at this point, I think it changes as time goes by. Certainly, there's no reason why if it's recognized that the case was timely filed and it challenged that this student government body was illegitimate... Did you seek preliminary injunctive relief? We looked for injunctive relief in the state court. We never filed in federal court. And the efforts in state court were denied, and was there an appeal taken? They were denied. No appeal was taken. There was one related case in which there was some injunctive relief provided solely to Mr. Sadiq on some of his claims. I, you know, this would not be... I think the fact that time has passed certainly means that as time goes by, the prospects of meaningful relief do shift and they do add. But there's no reason at this point, I think, under the law, why you couldn't go back at this point and say, this body is misfounded. It's in continuing violation of the state law because it's not a representative student body. It is not what the statute requires. Its ongoing existence day to day is an affront to the statute. Are there articles of incorporation or bylaws? Is the nature of this competing student body reduced to writing in some fashion? Yes, the competing student body has a constitution that was adopted by a popular student referendum after having been offered to students in a petition. So 1,300 or 1,400 students all signed a petition with the constitution that was proposed attached and they all endorsed that and then there was a subsequent referendum in which it overwhelmingly passed. But this is the one, just to be clear, that was not adopted by... This was not recognized by the administration. Not recognized by the administration. The administration continued to allow the other student government, what we consider the puppet student government, to control student fee funding, to control appointments to committees like the Chancellor's Certainty and Screen Committee. And we'd just like that to change prospectively at this point. It would be nice if we could have gotten more of it changed... So you'd be willing... Actually, just to narrow this further, even if you just were to receive an injunction that says implement the student constitution, the student body constitution that was approved by the voters, let the new people change the legislation as we will. You know, you can't... To go back and undo all legislation as soon as you have a problem with an election is a sweeping sort of remedy, which we don't do normally. But if prospectively, once you've, as it were, restored democracy, you let the new group do whatever it wants to do, maybe they even like some of the things that happened. Who knows? Right. And we've made a broad request in our claims for relief, but we understand that if this reaches the stage where there is a trial and a conclusion, that the judge, in this case, would have broad authority to shape appropriate relief. Yeah, I mean, that's true anyway under the federal rules. Let me ask you this from a basic understanding. How many campuses are involved in this? Essentially one campus here. This is the Milwaukee campus. The Milwaukee campus only. Yes. And, Your Honor, as I see, I'm already running into my rebuttal time. You are welcome to save your rebuttal time. Thank you very much, Your Honor. Thank you. Mr. Murphy. May it please the Court, my name is Mike Murphy. I represent the Defendants' Appellees in this case. This is a case about failure to meet pleading standards after four opportunities. I'm not sure it is, and I actually have to say there are a couple of things the district court did that I find troublesome, that don't have anything to do with what we've just been discussing with Mr. Grass. One of them is to look at the affidavits of service and just decide they're late, and therefore, you know, after a lot of time, but there are no competing affidavits in the record, so I don't understand that. I don't understand why in federal court, 28 U.S.C. section 1448 doesn't govern the time to serve after a case has been removed and there are still unserved defendants. And I don't see any indication that Judge Stattmuller recognized that he had discretion to allow extra time under Rule 4M, even though, whether or not there was good cause or anything. So I think there's some problems with that, and I can move on to sovereign immunity in a minute, but if you want to talk about this first. Even the 1448 deadline was not met. But there's discretion in the district court, that's why I mentioned 4M, to extend, and there's no hint. Indeed, what he thinks, which I believe is a legal error, is that his hands are tied by a Wisconsin law about extending time for service. But time for service is a matter governed by the federal rules. The consequences of a late service, perhaps for the statute of limitation, is something under Erie and the like that might be governed by state law. But we haven't gotten there yet. We don't have a Walker v. Armco Steel problem. All we're talking about is how much time do you have to do the mechanical act of service, and Judge Stattmuller seems to have thought, well, it was too late for a Wisconsin court, therefore it's too late for me, which is a mistake. I don't think he said that. I think he said that regardless of the rule, if you take the 90 days, which cannot be extended, or the 120 days under 1448, either one was missed here. And that's where he should have turned to Rule 4M. Well, it was more than a year late here. It doesn't matter. He should have turned to Rule 4M, and he should have asked, is there a reason to exercise my discretion to extend the time? He doesn't do that. He thinks he can't because of this Wisconsin law. I don't read the decision to say he thinks he can't. I think that he may not have gone through an analysis of factors, but he did use discretion. He did recognize the rule. I can't give you the page number, but it was cited in the decision. And the review for that is abusive discretion. And when a party is not served. Well, I'm going to find the page. Was he asked to exercise his discretion under Rule 4M without good cause? There was briefing on extending. There were four rounds of dismissal, and I can't remember the arguments made well enough to tell you that with authority. But there was discussion in briefing by the appellants here, the plaintiffs below, about extending that. So he says on page 9, for example, of his opinion. This is the most recent opinion? Yes, the one that's here. This is the Stattmuller opinion. Okay. He says, four months later, the existing defendants removed this action to this court. Once the action was removed, plaintiffs lost the ability to bring the unserved defendants into this case. No citation of 1448. Then in the next paragraph, he says, the plaintiffs assert 1448. But he says then the Fourth and Eighth Circuits found a case where the time for service under state court rules has expired. You can do new service. And then he just goes on in the next page. I'm up to page 11 now, where he's saying they still failed no affidavits, except then he says dubious-looking affidavits when there are no counter-affidavits in the case. There are. Only evidence. There are. He doesn't cite them. He does not cite them. Look at page 11. All he says is these took a long time. And there's no. There are competing affidavits showing late service. And on our brief. And he's angry that the affidavits were not presented to the court as he puts it at the opportune moment. Then he goes off on 6B. Page 34 of our brief gives the record citations to the services that was late under either the 90 days or the 120 days. I also can't give you the page number. I read the appellant's brief to be disclaiming those earlier affidavits that had significant irregularities. I think it says we're not relying on those. It was a footnote. I can't remember which one. But the record cites are all on page 34 showing late service. A year and a half after the parties were joined. After the 90 days. After the 120 days. And that's where Rule 4M comes into play. Rule 4M, which says time limits for service of a defendant is not served within 90 days. The court. So you have two things. You know, if the plaintiff shows good cause, the court must extend the time for service. But the court has the power. The court may extend the time even if the court, you know, doesn't think that something as high as a good cause standard. I don't have that set. Do you memorize? That is generally not done after the timeline has been missed. I don't know if it's permissive or not, but that would be very unusual, and particularly a year and a half after a party was joined. Well, but the removal changes the time frame quite significantly for this. That timeline was missed as well. What you would have to do, I think, you can take some of the district judge's language concerning Rule 6, and if that same reasoning applies to Rule 4M, that would be a good explanation as to why Judge Stadmuller was not inclined to exercise grace to allow those defendants to be brought in so late. Now, it's not quite as neat as a Rule 4M analysis, but it's some of the same points that are being made. That may be true, but there is also on page 12, this is why I made the point I did initially, where he says, second, whether the court considers excusable neglect or good cause to be the appropriate standard. That's where he's trying to bring in whichever it is, 6B or Rule M. He says, it is Wisconsin's law of service that controls in this removed action, and the court cannot retroactively extend the service deadline if the plaintiff's missed. That's just wrong. There is people who support that. It is not Wisconsin's law of service that governs. The cases said in their brief, I think, do support that. And the difference is— No, that's just not right. Wisconsin law certainly governs whether the statute of limitations was blown. Wisconsin law governs a lot of things, but not in federal court service. The statute addressing federal court service after removal applies or should apply when service is not completed when removal takes place. Ninety days is the end of the service period under Wisconsin law, and the cases do say that a federal court, upon removal, only gets the jurisdiction that the state court would have had. No, that's actually not entirely true either, because, I mean, we're in 1448 now, and it just says, in any case removed, any one or more of the defendants has not been served with process or in which the service hasn't been perfected. That's our people. There are a bunch of people who haven't been served. Such process or service may be completed or new process issued in the same manner as cases originally filed in the district court. But that timeline was not met here. That's your best point. It is not because Wisconsin law has anything to do with it. It's because 1448, and, of course, it changes from 120 days to 90 days during the course of this lawsuit, but even, you know, we would assume 120 days. But my concern is the district court is using the wrong intellectual construct as he's looking at this, and it may have affected his evaluation as to whether his discretion should be exercised. Well, Your Honor, our response to that is it's not reasonably an abuse of discretion here to not allow service more than a year and a half after the parties were brought into the case when both state and federal deadlines were missed. Well, I'm saying that that may not be the case anyhow. Your opponents have other things, and when the district judge uses the wrong legal framework, you just don't know how he would have approached the case if he was using the right framework. Ms. Murphy, could I ask, what troubles me is the disposition of the federal claims here. I'm sorry. The disposition of the federal claims, counts one through five. It's a little hard to follow, frankly, but my impression is that they're being dismissed for having been improperly joined together. And ordinarily, the remedy for misjoinder would simply be to sever, allow them to go forward as separate actions, and dismissal would be without prejudice. Certainly they are misjoined. That's not clear either, but Judge Hamilton is right. The remedy, even if they were, isn't to throw the whole case out. But the core of the decision here is that after four attempts to fix joinder problems, you've had your fourth bite of the apple. Your opponents don't see this as four attempts, though. They see this as they start out in state court, then eventually it gets moved to federal court. This is not anything like these cases where prisoners bring 48 claims against 65 officials, and they're all about different prisons and different problems and different times. This all has got a core effect about the student government structure at the University of Wisconsin at Milwaukee. And so I'll just say it's a much closer case in terms of Rule 20 and Rule 18 than anything we've been concerned about in other cases in this line. Well, the sixth claim, the one that I think they would argue ties it all together, has been dismissed for sovereign immunity reasons, and many of the defendants that would be necessary to theoretically tie these together have been dismissed for lack of jurisdiction, most particularly the Board of Regents and the chancellor. But we're here to review all of that. So in terms of assessing the complaint and asking whether what should have happened is what Judge Hamilton described, severance, maybe somebody gets new docket numbers, they've got to make additional filing fees, whatever. There are plenty of tools for the district courts to handle this kind of problem. My response is practical. After four attempts with a party represented by counsel, what more should the district court have done? And I think their response is they've done enough. The district court should not have abused its discretion. What was the defect, though? What's the defect that justifies dismissal with prejudice of the federal claims? Well, we continue to believe this complaint violates Rule 8. The district court cited Rule 8 but did not need to get to that analysis. We have cases that say a prolix complaint that nonetheless gives the other party notice of what the case is about is not what our hope is under Rule 8, but you don't edit people that tightly. I mean, imagine the job of the district courts if every time a complaint is over 25 pages long, it has to sit there with a red pencil and decide what stays and what goes. So if not Rule 8, what else? Misjoinder after four tries and a lack of jurisdiction for sovereign immediate reasons under the one theory that could conceivably, but we still believe does not, tie these together. I get that, but even if you throw out the sixth claim, which I certainly understand here, I don't see dismissal with prejudice. And I also will just remind you that Rule 21 says without any equivocation, misjoinder of parties is not a ground for dismissing an action, period. That's the end of the sentence. And the core reason for the dismissal with prejudice here is the four chances given and missed to file a competent pleading. That is ground for dismissal with prejudice. Many cases say that. You still have to identify a defect. A misjoinder is a defect. No, it's not. It's not a ground for dismissal with prejudice. Nothing in the rule says unless you've tried four times. But failure to file a competent complaint is ground. Why was this complaint not one which showed that there was federal jurisdiction, that showed the wrong that the person felt had been committed, that showed the relief that the person. Yes, is it long and boring? Sure. But that's not ground for dismissal. That's not a failure to state a claim upon which relief can be granted. It's more than long and boring. It is conclusory. It does not let the defendants understand. Oh, it's perfectly clear what they're complaining about. I mean, I don't know what version of code pleading you want the federal courts to use, but we are still under a notice pleading regime. Well, I disagree, and the district court did it three times as well. We are reviewing the district court. I understand. As fond of Judge Stabler as I am. That's not the question. Yeah. Well, I mean, after four attempts. So claims cannot go forward if they're misjoined. I think we can agree that. He kept saying you need to draft a better complaint. But unless the problem is a failure to state a claim kind of problem, like, okay, this bad thing happened to you, but the law simply doesn't provide redress, that's the kind of thing that you would expect to see discussed, not, gee, this thing is still too long. It's not too long. He mentions misjoinder all throughout the dismissal. Which is not a ground for dismissal with prejudice. And for three times it was not. It's still not. No, it isn't. Represented parties at some point have to take the responsibility to make their  No, at some point the judge has to sever the claims. And if they don't want to pay an extra filing fee, and if they don't want to go forward on the restructured case, fine. You are creating a remedy that is simply not there in the federal rules of civil procedure. There is a four whites with the apple rule. So if this was another chance and we were here. I'm sorry, where? Well, this course has mentioned that. Regardless of circumstances? No, not regardless. That's not a rule of law. No, it's not a rule. It is not a rule. That has been said by this court. But you're right, it's not a rule. When somebody is trying to state a claim, and let's say they keep saying, you know, Dr. X at the prison in Wisconsin was deliberately indifferent to me.  X gave him Tylenol instead of Motrin. And you say that's not, that fails to state a claim. You haven't shown, you know, a serious medical condition. And he tries again. He says Tylenol, not Motrin. That's the kind of thing. If that's all he's got, that's all he's got. There doesn't need to be any need to replete. That's not what this situation is about. There must be some limit, right? And the district court here picked four. Why not? Why isn't the remedy the one the rules give them? Sever. Sever to have the, so the idea would be to have the judge make a decision for represented parties. I just don't think that that's a good way. You disagree. We should then go to the rules committee and say, please delete Rule 21. No. Well, that's what you're saying. No, I'm saying that after, that district court has grounds to dismiss with prejudice after four attempts to file an incompetent plea. Plaintiffs are entitled to disagree with district judges, right? Yes. And if plaintiffs believe that they have properly joined these claims, they're entitled to adhere to that position and provoke the judge to take action, right? They don't have to comply with his orders about how they plead on those matters. And if the judge is not satisfied, the rules provide the remedy of severance. So, and then those issues can be appealed later on after a final judgment. But I still haven't seen, maybe it's, but I still haven't seen a path to dismissal with prejudice here. Well, I think that Rule 8 is an adequate ground. Rule 8 doesn't actually, I mean, how about Rule 8 says do this. Rule 12 is what gives authority to dismiss. Rule 12, yes. And what part? Failure to state a claim? Yes, yes. What's missing? Well, just some practical limit here on the number of amendments, the number of chances, bites of the apple. But that's, you know, Judge Hamilton's asking what's missing. If you were briefing why this complaint fails to state a claim on which relief can be granted, what element are they missing? Conclusory allegations that do not let the individual defendants understand how they need to respond to the allegations. That's a conclusory answer to my question. You're not telling me. I mean, this thing goes on forever. They're talking about what the different defendants did, how they're forcing them to make apologies, how they delete them from their jobs, how they changed the student constitution, how the right to organize recognized in 36.095 is being violated. So the students do have a right to self-organize, not just in some puppet group. They go on and on and on. So I don't know where. On and on and on indeed. Far beyond. I don't know where the detail that you want, you know, did you want a 300-page complaint? No, we wanted a short and plain statement of the case, and this is not that. This complaint does not have that. All right. Did you want to address the sovereign immunity point at all? No. I'll give you an extra minute to address sovereign immunity, because my concern there is that only some of the defendants moved for dismissal on sovereign immunity grounds. The Board of Regents and the Student Association, what was called the DSA, did. But each defendant who wishes to raise sovereign immunity needs to raise that issue or it's waived. Well, in response to that, I would just say the district court made the right analysis here. There's no practical prospective relief that can be granted. For the points I will say that were made by the court during questioning and the first half of this argument, that we are now multiple student election cycles beyond the events. Many of the students who may have had an interest no longer do. I think there are mootness issues here related to the sovereign immunity and there's just nothing practical going forward that can be done. Despite what your opponent was willing to narrow his case to in our first part of this argument? Yeah. I mean, it's up to the judge to decide the scope of an injunction. It's certainly not up to the parties. Yes. I don't think there's enough in the records or pleading now. Because there is no record. This is on the pleadings. Right. Or even allegation-wise. But I don't think that, I mean, to your point exactly, we are now years past a constitutional referendum. What can reasonably be done prospectively to fix that based on the facts? Put in place the new constitution and let the process move forward. Simple. The new constitution. That would be the one that was never adopted, never endorsed by the university. The one that the majority of students voted for. I do not believe that that's correct. I don't think the pleadings even say that. I don't think that a majority of students voted for the competing constitution. Well, it was just represented to us that that happened. Right. Anyway, something like that could easily happen. A new election could be called. Sometimes that's enough. The new election, I think the only reason, the only way a new election would be a proper perspective is if there is some suggestion that the current election, the election that put the people in power who are there now, was somehow defective. And that's not alleged. That's not part of this case. So I don't think there's any meaningful perspective really to be granted here. All right. Well, thank you very much. I appreciate your argument. Thank you. Anything further, Mr. Grass? I only have a few notes here, but I'll address them. First, Judge Hamilton, I believe you asked whether the plaintiffs had asked particularly that Rule 4M be applied. And we did make that argument in our final brief that was opposing dismissal of the third amended complaint. We explicitly said in there, even though we gave a little bit of a Rule 6 analysis, that there might be some overlap between Rule 6 and Rule 4, but we stated that this is not under Rule 6. We're making this claim under Rule 4. So that argument was made. Judge Sykes, you quoted... There is no Judge Sykes present today. Oh, I'm sorry. Separate panel. I'm sorry. I'm confused. It explains why you don't look like the Judge Sykes I remember. But the question about Judge Stadmiller referred to whether you used the rubric of good cause or excusable neglect. It sounded like you were saying that that was like a distinction between a 4M and a 6B analysis. And our understanding of Judge Stadmiller's ruling is that both of those were under Rule 6, that neither of those was a Rule 4 discretionary analysis. They were both ways of understanding Rule 6. Maybe I misunderstood that. If I understand this situation correctly, Mr. Grass, there is an argument that Judge Stadmiller did not properly exercise his discretion to exercise it under Rule 4M. I have to say, reading his decision, if we were to remand and ask him to exercise his discretion on that subject again, it's hard for me to see a different result. Maybe, but would that do you much good? I think it could do us some good. And, of course, when we made that argument to the district, it was then Judge Clavert. But I think whatever this court decides, when it sends it back down to the district, I think they're going to have to look at it very carefully. And in the process of exercising that discretion, I don't know what will happen. I mean, the judge could change his mind based on full consideration of all the circumstances. I think the judge will obviously want to be very careful when that happens. Suppose we said go back and try the case. Could you try the case on this complaint? I think we could. What kind of instructions would you have? Well, I think if the state claims were there, we'd certainly have to have a detailed instruction on Chapter 36, because no one knows what it is. Do you think this would be a jury claim? I don't know. On the election contest? The other side made a jury demand. We did not make a jury demand, but if they want to have a jury there, that's obviously their right. Would you contemplate discovery before you started figuring out what the jury instructions were? Yeah, obviously. I mean, if you try to do jury instructions based on this, whatever you call it, complaint, it would be impossible. Impossible. You couldn't instruct a jury on this. If we went back, obviously there would be a chance for discovery, and perhaps the judge would allow certain refinements in the complaint. I'm not sure they would be necessary, but we would pass that bridge when we came to it. Well, maybe you should win before us and go back and try it and see what happens. I hope we win here, and I hope we go back and see what happens. All right. Thank you very much. Thank you very much, Your Honor. Thanks to both counsel. We will take this case under advisement.